Morse vs. Hagenah, imp.

---

MORSE, Respondent, vs. HAGENAH, imp., Appellant.

*March 23 — April 12, 1887.*

*Partnership: Promissory notes.*

1. A firm engaged, among other things, in carrying on a mill in which it holds stock, is liable upon a note, given for a loan of money to keep such mill in operation, and signed in its name by one of the partners, though he had no special authority from his copartners.
2. This is so, especially, where the firm has by its acts held out such partner to the public as clothed with authority to give notes generally in its name.

APPEAL from the Circuit Court for *Sauk* County.

The action is upon a promissory note for $10,000, signed in a firm name by one of the copartners, and by other makers, payable to the Reedsburg Bank, and by the bank assigned to the plaintiff. *Peter Hagenah*, a member of the firm, denies that it ever executed the note or is liable thereon, and appeals from the judgment as against himself.

For the appellant the cause was submitted on the brief of *G. Stevens*.

For the respondent there was a brief by *Lusk & Bunn*, and oral argument by *Mr. Lusk*.

COLE, C. J. The defense of *Peter Hagenah* to the note in suit is that it was not given for any indebtedness or liability of the firm of Hagenahs & Geffert, and that the firm received no benefit from the consideration of the note. It is not claimed that the note was signed by him, but the firm name was signed to it by his brother John, who was the financial manager of the firm and usually executed its notes. *Peter's* contention is that he had no knowledge of the giving of the note, never assented to it, and that the note was executed for a purpose outside the partnership business, therefore he is not responsible upon it, though it was executed in the name of the firm. The firm was composed of three members,— John H. and *Peter Hagenah*, and Henry Geffert. It was engaged in a variety of businesses,— dealt in hardware, traded in agricultural implements, sold flour and feed, bought and sold grain, ran a brewery, bought and sold hops, dealt some in real estate, took stock in a woolen-mill, and was ready to do anything that there was a prospect of making money in. The firm name was signed to the note with the names of other stockholders in the woolen-mill, to raise money to carry on the mill. It is an undisputed fact that the firm of Hagenahs & Geffert owned stock in the woolen-mill. The firm thus owning stock in the mill, the learned

counsel for the plaintiff insists, had the undoubted power to borrow money to keep the mill running, so as to protect its own property therein, even if its liability could not be sustained upon any other ground. There is great force in this view of the transaction. The making of the loan for the purpose of keeping the mill in operation would certainly seem to be for the benefit of the firm as well as other stockholders; and upon familiar principles there would be ample authority of each partner to bind the firm in making the note for such a purpose as when executing it in any other partnership business. In commercial dealings within the scope of the partnership, the acts of one partner are presumed to be for the benefit, and in the interest, of all other partners, whether present or absent, and bind the firm. *Fletcher v. Ingram*, 46 Wis. 204; Story, Partn. §§ 102–104. The defendants' counsel says that the object and purpose of the note was so far outside of the business of the firm of Hagenahs & Geffert that the mere partnership relation gave no authority, either express or implied, to sign the firm name to it; so, if *Peter* had not previously authorized it, he was no more bound by it than if the signature had been made by a mere stranger. But the answer to this argument is that it is difficult to say upon the facts that the giving of the note was outside the business of the firm; for *Peter* says the "firm went into anything we thought we saw money in." The firm took stock, as we have said, in the woolen-mill, while carrying on other branches of business. How can it be said, then, that the making of the loan to keep the woolen-mill running was foreign to the partnership matters? It would seem to be as fully within the scope of the partnership — as conducted — as running the brewery, or dealing in agricultural implements, or buying produce. The fact is, the firm did not confine itself to any particular branch of business. It engaged in any transaction or enterprise likely to be profitable.

The learned circuit judge did not rest the liability of *Peter* upon the precise ground above indicated. He instructed the jury quite fully upon the law of partnership, and what acts of a partner bound the other members of the firm. Among other things, he said: "Each partner of a mercantile firm has authority to bind the firm within the scope of the partnership business, but, in order to bind the firm in matters outside of or beyond the scope of the partnership business, the authority of one partner to act for and bind the firm by the use of the firm name must be shown precisely the same as if any other person had performed the act. Instances of partners using the name or credit of the firm for their own personal advantage, or for matters outside of the scope of the partnership, and without authority, are constantly occurring, and where this is known to the person thus dealing with the partner who uses the firm name for his own personal benefit or for purposes outside of the scope of the business of the firm, the members of the firm not knowing or assenting to such use of the firm name will not be bound, but the member using the firm name will be bound; and it is a rule of law that, whenever a party receives the note of a firm signed with the firm name, with knowledge that the money for which such note was given or received is obtained and is to be used for purposes outside of the scope of the business of the firm, the presumption of law is that the partner who gives such note gives it, and the creditor who receives it receives it in fraud of the copartnership, and consequently the person thus dealing with the partner has no demand against the other members of the firm. . . . I will add, if a firm should hold out to the public one of their members as clothed with power generally to give notes in the name of the firm in any business he should deem advisable, the firm would be bound when such member thus held out should give a note. On the subject of assent, I will instruct you

further, and by way of illustration, if a member of a mercantile firm should give a firm note for his personal debt, the assent or consent of his copartners to the act, or their ratification of it, may be implied from circumstances, and need not be proved by express agreement. Nor need there be any new and independent consideration for the act of the other partners ratifying or promising to be bound by the act of a copartner who has wrongfully used the partnership name for his own benefit or for purposes outside of the scope of the partnership."

Specific exceptions were taken to the last three clauses of this charge; but we do not think they contain anything prejudicial to the defendant *Peter*. It is said there is not a syllable of testimony that the firm held out to the public one of its members as clothed with authority generally to give . notes in the name of the firm in any business he should deem it advisable to embark in; but, as we understand the testimony, there is abundant evidence to that effect.

Again, it is said there is not a word of testimony tending to show that notes were given by any one in transactions outside of the hardware trade, as the firm extended its business. But there is direct and positive testimony that more than one hundred notes were given to the Reedsburg Bank alone, amounting to $115,000, presumptively in the various business transactions in which the firm was engaged. Money was advanced from time to time on this paper, to which John H. had signed the firm name.

We have not noticed in detail the points made by the learned counsel for the defendant in his brief, but we think the above remarks dispose of all material objections taken by him to the proceedings on the trial.

*By the Court.*— The judgment of the circuit court is affirmed.