(May 24, 1901.)

# FIRST NATIONAL BANK OF MANKATO, MINNESOTA, v. GRIGNON.

[65 Pac. 365.]

PARTNERSHIP—PRESUMPTIONS.—Where a copartnership is shown to exist, it is presumed to continue until notice is published or brought to the attention of those dealing with it.

AUTHORITY OF MANAGING PARTNER.—The managing partner has authority to execute and deliver notes and renew them as the business of the firm may require.

SERVICE BY PUBLICATION—JUDGMENT IN REM.—A judgment rendered in another state on promissory notes against a firm, one of whom is a resident of the state in which the business is carried on, and the other of this state, and service on the resident of this state is by publication, is a judgment *in rem*, and is not a bar to a suit in this state on the original obligation.

NOTES—CONSIDERATION WANT OF.—A plea of want of consideration cannot be maintained, where it is shown that all transactions were had by and with the managing partner, and for an existing obligation, and no fraud or collusion is shown.

(Syllabus by the court.)

APPEAL from District Court, Canyon County.

Frank Smith and W. E. Borah, for Appellant.

Either partner is a general agent of the firm to carry out and transact its business. (*Barber v. Van Horn,* 54 Kan. 33, 36 Pac. 1070; *Rich v. Davis,* 4 Cal. 23; *Pierce v. Jackson,* 21 Cal. 636.) Every member of an ordinary trading partnership has implied power to bind the firm by trading, accepting or indorsing bills of exchange, or by making and indorsing promissory notes in its name and for the purpose of the firm. (Lindley on Partnership, 287; *Gray v. Ward,* 18 Ill. 32; *Morse v. Hagenah,* 68 Wis. 603, 32 N. W. 634; *Stimson v. Whitney,* 130 Mass. 541.) A partnership cannot impeach a note signed with its firm name by one partner when its course of business has been such as to induce an honest belief in the payee that the partner has authority to sign. (*Kelton v. Leonard,* 54 Vt.

230; *Carrier v. Cameron,* 31 Mich. 373, 18 Am. Rep. 192; *Littell v. Fitch,* 11 Mich. 525; *Davis v. Cook,* 14 Nev. 265.) If a person known to be a partner retires and does not notify his retirement, he will continue to be bound by the acts of his late partners as if his partnership, with them continued. (Lindley on Partnership, sec. 410, p. 509; *Southwick v. McGovern,* 28 Iowa, 533; *Howell v. Adams,* 68 N. Y. 314; *Ellis v. Bronson,* 40 Ill. 455; *Hickson v. Pixley,* 15 Nev. 475; Lindley on Partnership, 540; *Elkinton v. Booth,* 143 Mass. 479, 10 N. E. 460; *Strecker v. Connecticut,* 90 Ind. 469.) Upon the dissolution of a firm, a bank with which it has kept its deposits is entitled to actual notice of the dissolution, and until such notice members of the firm will be liable as partners. (*National Shoe Co. v. Herz,* 89 N. Y. 629; *Pursley v. Ramsey,* 31 Ga. 463; Am. & Eng. Ency. of Law, 1122.) The common-law rule that in a suit against several joint debtors plaintiff must recover against all or none is changed by the statute which we have above quoted. (*Knatz v. Wise,* 16 Mont. 555, 41 Pac. 711; *Lewis v. Clark,* 18 Cal. 389; *Bailey Co. v. Hall,* 110 Cal. 490, 42 Pac. 962; *Morgan v. Rigetti* (Cal.), 45 Pac. 260; *Atlantic Ry. Co. v. Laird,* 164 U. S. 393, 17 Sup. Ct. Rep. 120; *Bonesteel v. Todd,* 9 Mich. 371, 80 Am. Dec. 90; *Odom v. Denny,* 16 Gray, 114; *Stone v. Wainwright,* 147 Mass. 201, 17 N. E. 301; *D'Arcy v. Ketchum,* 11 How. 165, 13 L. ed. 647; *Larison v. Hagar,* 44 Fed. 49.) Where there is a want of jurisdiction, the records are not entitled to credit. (*Board of Public Works v. Columbia College,* 17 Wall. 521, 21 L. ed. 687; *Hall v. Lanning,* 91 U. S. 160, 23 L. ed. 271; *Ells v. Bone,* 71 Ga. 468; *Pitts v. Spots,* 89 Va. 71, 9 S. E. 502; *Bank v. Robinson,* 13 Ark. 214; *Goldey v. Morning News,* 156 U. S. 518, 15 Sup. Ct. Rep. 559, 39 L. ed. 517.) The original loan was sufficient consideration for the last note, and the original note being past due and in the possession of the plaintiff below, the defendant is fully protected against a recovery thereon. In the case at bar the notes are here for cancellation. (*Saunders v. Bates,* 54 Neb. 209, 74 N. W. 578; *Perrin v. Royal,* 42 Ind. 132; *Woodbridge v. Skinner,* 15 Conn. 304; *Murphy v. Cary,*

89 Hun, 106, 34 N. Y. Supp. 1038; *Low v. Learnerd,* 13 Misc. 150, 34 N. Y. Supp. 68.) The partnership being once established or admitted, it is presumed to continue until its dissolution or discontinuance is affirmatively shown. (1 Jones on Evidence, sec. 54; 2 Wharton on Evidence, sec. 1284; 1 Greenleaf on Evidence, sec. 42; 1 Rice on Evidence, sec. 44; *Kidder v. Stevens,* 60 Cal. 414.) The dissolution of a partnership will not affect the rights of holders of negotiable paper executed thereafter in the firm name by one of the partners unless the holders have notice of the dissolution. (*Rocky Mt. Nat. Bank v. McCaskill,* 16 Colo. 408, 26 Pac. 821; *Farwell Co. v. Cashman,* 16 Mont. 393, 41 Pac. 443; *Johnson v. Totten,* 3 Cal. 343, 58 Am. Dec. 412; *Williams v. Bowers,* 15 Cal. 321, 76 Am. Dec. 489; *Palmer v. Dodge,* 4 Ohio St. 21, 62 Am. Dec. 271, 273; *Elkinton v. Booth,* 143 Mass. 479, 10 N. E. 460; *White v. Hudson* (Tex. Civ. App.), 36 S. W. 332; *Bank of Monongahela v. Weston,* 159 N. Y. 201, 54 N. E. 40, 45 L. R. A. 547.)

Brown & Cahalan and Hawley & Puckett, for Respondent Coughanour.

A partnership is dissolved when it ceases to do the business for which it was organized. (*Potter v. Tolbert,* 113 Mich. 486, 71 N. W. 849; 3 Kent's Commentaries, 13th ed., 62; Parson's on Partnership, 3d ed., 416; *Spurck v. Leonard,* 9 Ill. App. 174; *Bank of Montreal v. Page,* 98 Ill. 109; *Ligare v. Peacock,* 109 Ill. 94.) Notice of dissolution may be expressed or implied. (Byles on Bills, 50, note; 3 Kent's Commentaries, 8th ed., 53, note, p. 58; Parsons on Partnership, 1st ed., 385; *Bank of Montreal v. Page,* 98 Ill. 119; 1 Randolph on Commercial Paper, sec. 437; *Dickinson v. Dickinson Co.,* 25 Gratt. (Va.) 321; 2 Bates on Partnership, sec. 621; *Mauldin v. Branch Bank at Mobile,* 2 Ala. 502; Collyer on Partnership, sec. 533; Kent's Commentaries, 66, 67; *Laird v. Iven,* 45 Tex. 621.) The moment a partnership terminates, the partners become distinct persons with respect to each other, and that consequently one partner can have no power to subject, by his acts or declarations, his former associate to new obligations, burdens or responsibilities. (*Ellicott v. Nichols,* 7 Gill, 85, 48 Am.

Dec. 546.)    He cannot change the form of the indebtedness by giving a new note in the name of the firm.    (*Perrins v. Keene*, 19 Me. 355, 36 Am. Dec. 759; *National Bank v. Norton*, 1 Hill (N. Y.), 572; *Palmer v. Dodge*, 4 Ohio St. 21, 62 Am. Dec. 271; *Haddock v. Crocheron*, 32 Tex. 276, 5 Am. Rep. 244; *Smith v. Sheldon*, 35 Mich. 42, 24 Am. Rep. 529; *Bank of Montreal v. Page*, 98 Ill. 109, 120; Collyer on Partnership, 4th Am. ed., sec. 541; 3 Kent's Commentaries, 8th ed., 70; *Hamilton v. Seaman*, 1 Ind. 185; *Palmer v. Dodge*, 4 Ohio St. 21, 62 Am. Dec. 271; *Wilson v. Forder*, 20 Ohio St. 89, 5 Am. Rep. 627; *Carry v. White*, 41 Cal. 530; *Brown v. Broach*, 52 Miss. 536; 1 Daniel on Negotiable Instruments, p. 280, sec. 373; *Perrin v. Keene*, 19 Me. 355, 36 Am. Dec. 759; *National Bank v. Norton*, 1 Hill, 572.)    A new promise to pay a debt cannot be enforced without a consideration therefor.    Unless the old promise is treated as discharged by the new, an action will not lie on the new, and where suit is brought on the old it cannot be considered as so treated.    (*Gilmore v. Green*, 14 Bush (Ky.), 772; *Ogden v. Redd*, 13 Bush (Ky.), 581; Smith's Leading Cases, pt. 1, p. 270; *Ritenour v. Matthews*, 42 Ind. 7; *Laboyteaux v. Swigert*, 103 Ind. 596; *Vanderbilt v. Schreyer*, 91 N. Y. 392-401; *C. R. I. & P. R. Co. v. Grinnell*, 51 Iowa, 478, 1 N. W. 712; *Schuler v. Myton*, 48 Kan. 282, 29 Pac. 163; *Sullivan v. Sullivan*, 99 Cal. 187, 33 Pac. 862.)    The liability of partners for a debt due from the firm is such that a several action cannot be maintained against each partner, if a plea in abatement is interposed.    In case no such plea is made and a judgment is obtained against one or more of the partners, no further suits can be maintained. (Freeman on Judgments, sec. 232; *Stoo v. Lea*, 18 Ohio, 279; *Crosby v. Jeroloman*, 37 Ind. 276; *North v. Mudge*, 13 Iowa, 496, 81 Am. Dec. 441, 15 Am. & Eng. Ency. of Law, 342; *Barnet v. Judry*, 38 Ind. 86.)    A recovery upon a partnership contract merges the debt, and a judgment against one partner constitutes an estoppel in a subsequent action for the same breach against his copartners.    (Herman on Estoppel, 91, 189; *Tinkum v' O'Neal*, 5 Nev. 93; *Mason v. Eldred*, 16 Am. Law R. 402; *Bank of Columbus*, 5 Ohio St. 34; *Olmstead v. Webster*, 8 N. Y. 413.)

STOCKSLAGER, J.—The appellant alleges that it is a corporation doing business at Mankato, Minnesota, and that Henry R. Grignon and W. A. Coughanour are copartners under the firm name and style of Grignon & Coughanour; that on the seventeenth day of August, 1896, at Mankato, Minnesota, the said defendants made, executed, and delivered to plaintiff their certain promissory note, to wit: "Sixty days, without grace, after date, I promise to pay to the order of the First National Bank of Mankato $1000, with interest at the rate of eight per cent per annum until paid. Payable at the First National Bank of Mankato, Minnesota. Value received. Grignon & Coughanour." Then follow the usual allegations for a second cause of action, based upon a promissory note of the same date, and for the sum of $1,000. And for a third cause of action it is alleged that the same defendants executed and delivered their promissory note to plaintiff for the sum of $3,000, also payable at the same place in sixty days, and with the same rate of interest. The fourth allegation is that there has been paid on said note (the last one), February 15, 1897, $1,191.60; November 30, 1896, $436.22; that the balance of said note is due, and wholly unpaid, together with interest thereon from August 17, 1896, at the rate of eight per cent per annum. The fourth cause of action is based upon a note for $175, dated August 16, 1895, payable on demand, with interest at eight per cent. The fifth is based on a $400 note purporting to be dated August 17, 1896, interest eight per cent, and payable to same party and at same place. The sixth is based upon a note of date September 16, 1896, for $175, interest at eight per cent. The seventh is based upon a note dated August 17, 1896, for $432, interest at eight per cent, with a credit of $22.05, dated April 16, 1897. Then follows an allegation that, after giving all credits, there is due the plaintiff from the defendants the sum of $4,532.13, with interest, etc. The defendant W. A. Coughanour, answering specially and in his own behalf, denies the allegations of the plaintiff that it is a corporation organized under or by virtue of the laws of the United States. That it is engaged in the banking business at Mankato, Minnesota. Denies the execution of the note set forth in paragraph 3 of plaintiff's first

cause of action, and denies any liability thereon. Alleges that
in the year 1895 defendants were engaged as partners under
the firm name of Grignon & Coughanour in the wholesale pro-
duce and creamery business at St. Clair, Minnesota. That de-
fendant Grignon at said time and since has resided at St. Clair,
and he resided in Canyon county this state. Alleges that on
or about the sixteenth day of August, 1895, the plaintiff pre-
tended there was due to it from said firm of Grignon & Cough-
anour the sum of $5,000, besides interest, for moneys pretended
to have been advanced to or paid out for said firm. That on
said sixteenth day of August, 1895, defendant Grignon, with-
out authority from him so to do, made and delivered to plain-
tiff three promissory notes—one in the sum of $3,000, the other
two in the sum of $1,000 each—being payable to plaintiff's
order, and providing for interest on the principal sum at eight
per cent per annum, all payable on demand, and signed in the
firm name of Grignon & Coughanour. That at the time of
executing and delivering these notes the firm of Grignon &
Coughanour were the owners of certain real estate in Blue Earth
county, in the state of Minnesota. That said property, al-
though it belonged to said firm, did not stand upon the records
in said county in the name of said firm, but, through inadvert-
ence, neglect or fraudulent intent of defendant Henry R. Grig-
non, had been put in the name of Jennie H. Grignon. That
when said promissory notes were executed and delivered, upon
the demand of plaintiff, as security for the judgment of said
notes, defendant Grignon and his wife executed and delivered
to plaintiff a mortgage upon above-mentioned property, and that
said mortgage was duly recorded. That various payments
were made upon said promissory notes by defendant to this
answering defendant unknown. That on or about the fourth
day of December, 1896, action was commenced by plaintiff in
the district court of Blue Earth county, Minnesota, against the
defendants, as codefendants, and against Jennie H, Grignon,
as codefendant, for the foreclosure of said mortgage, and against
the defendants for any deficiency. That summons was issued
and regularly served upon defendant Grignon and his wife,
Jennie H. Grignon. That an *alias* summons was issued and

published in the "Daily Free Press," published in the city of
Mankato, said Blue Earth county. That on the fifteenth day
of February, 1897, a hearing was had in said case, and a judg-
ment and decree of said court was made and entered, by which
it was found there was due plaintiff the sum of $5,155, costs.
taxed at twenty dollars, and an attorney's fee of fifty dollars,
and said property was ordered sold to satisfy said judgment
and a judgment for any deficiency that might remain after said
property was sold and the proceeds applied to the payment of
said judgment. That on the third day of April, 1897, the
sheriff of said county duly and regularly sold said property,.
and received as the proceeds of such sale the sum of $1,210,.
out of which said sheriff retained the sum of eighteen dollars
and forty cents costs of said sale, and paid to plaintiff the
balance, to wit, $1,191.60. That thereafter, and on or about
April 7th, after the sheriff had made return of his proceedings,.
the court ordered a judgment to be entered against both of these
defendants in the sum of $4,034.95. That the service was per-
sonally made upon defendant Grignon, and by publication on
the defendant Coughanour. That no appearance was made in
said suit by either of these defendants. That said judgment,.
as he is informed and believes, is still in force and effect against
defendant Grignon, and that no part thereof has been paid.
Denies the indebtedness of $4,532.13, or any other sum. Pleads
want of consideration for each and all of the alleged indebted-
ness set up in the several causes of action by the plaintiff. The
case was tried by the court without a jury on the twenty-sixth
day of September, 1900. Judgment was entered in favor of
the plaintiff against defendant Coughanour for the sum of
$1,591.08. October 4, 1900, plaintiff moved for a new trial,.
alleging the following errors: 1. That the evidence is insuffi-
cient to justify the decision or judgment of the court; 2. That
the decision is against law; 3. On account of errors of law oc-
curring at the trial, and excepted to by the plaintiff; 4. Irregu-
larity in the proceedings of the court, by which the plaintiff
was prevented from having a fair trial.

The record discloses that Henry R. Grignon and W. A.
Coughanour were copartners engaged in the business of handling
butter, eggs, and produce of different kinds at the town of St.

Clair, Blue Earth county, Minnesota; that Henry R. Grignon had full and complete charge and control of the business, he being a resident of that county, and the defendant Coughanour a resident of Canyon county, Idaho. It is shown by the record that all notes sued upon in this action were executed in the name of Grignon & Coughanour by defendant Grignon, and by him delivered to the bank. If this copartnership had ever been dissolved prior to the commencement of this action, the record does not disclose such fact. It is contended by defendant Coughanour that all these notes were given without consideration, and that the defendant Grignon, if he did execute and deliver them, did so without his knowledge or consent, and that, as a consequence, he should not be held to respond in payment. This seems to be the all-important question in this case, and upon its determination depends the right of the plaintiff to recover against defendant Coughanour. George H. Clark, cashier of plaintiff bank. testified: "Mr. Grignon did the business at our bank for the firm of Grignon & Coughanour. He made the deposits and did the checking. The bank did not know anybody else in the transactions except Grignon. Nobody else attended to this business at the bank except him. Grignon & Coughanour ceased to do business about the time I left the bank, about January 15, 1897. The firm of Grignon & Coughanour did not go out of business in the latter part of 1896. I knew of an association known as the 'Creamery Association' at St. Clair. I think that was probably organized in 1896. Its business was making and shipping creamery butter. The association did not succeed the firm of Grignon & Coughanour, to my knowledge. I know that the firm of Grignon & Coughanour continued business after the creamery association came into existence. Mr. Grignon had management of the creamery association. The association carried on their business at the same place, I think, that Grignon & Coughanour did theirs. The association was manufacturing butter, and not buying the products that had been formerly bought by Grignon & Coughanour. I am quite positive of that. I know that Grignon & Coughanour continued to handle produce there separate and distinct from the creamery association. The creamery associa-

tion had an account at our bank, and it was in no way blended with the business of Grignon & Coughanour." Mr. Coughanour (defendant here) testifies: "There have been letters introduced in evidence here, dated a number of years ago, in regard to my authorizing a credit of five thousand dollars, afterward extended to six thousand. I never authorized any greater amount than stated in those letters." He further testifies that he never received anything in the way of profits from the business or from the proceeds of the notes. On cross-examination he testifies: "I received no other notice from these suits spoken of [referring to the suits of foreclosure in Minnesota] than the summons through the mail. I was not present in Minnesota at any time. I have not been there for about eight years. There was never any profits in this business, that I know of. Mr. Grignon had entire charge of the business in Minnesota. He did the banking business, and attended to the matter for the firm, etc. The eight thousand dollars I sent there I sent to Mr. Grignon." Appellant's cashier, Mr. Clark, testifies: "The indebtedness of defendants to the bank began in 1888, and represents money loaned to defendants for the purpose of carrying on their business. The amount of indebtedness of the firm of Grignon & Coughanour to plaintiff in 1895 was $5,900 and some odd dollars. No part of that indebtedness has ever been paid, to my knowledge, except the credits which I have spoken of. It had not been paid when I left the bank. The notes sued upon in this action represent that indebtedness. The indebtedness has been carried along from year to year in the form of promissory notes commencing in 1888, and being renewed from time to time. The notes sued upon in this action are the renewal notes of the indebtedness of 1895." L. A. Linder testified: "I succeeded, as cashier, George H. Clark. I became cashier about the 14th or 15th of January, 1897. Neither of the notes sued upon have been paid, except as stated in Mr. Clark's testimony. The bank has never received any notice of the dissolution of the firm of Grignon & Coughanour since I have been its cashier." The trial court found findings of fact and conclusions of law, which were filed, and judgment

ordered entered for the sum of $1,591.08. This is for the indebtedness represented in the fourth, fifth, sixth, and seventh causes of action set out in plaintiff's complaint. The court found (thirteenth) that upon the eighteenth day of September, 1896, defendant Grignon made, executed, and delivered to plaintiff three promissory notes, one of said notes being in the sum of $3,000, and two of said notes being each in the sum of $1,000, and all of said notes being payable to plaintiff, drawing interest, etc., payable in sixty days; that each of said notes was dated August 17, 1896, instead of September 18, 1896, the day upon which they were executed and delivered; that no consideration passed from the plaintiff, or any one in plaintiff's behalf, to defendants as a firm, or to defendant Coughanour, for the said promissory notes, or either or any of them. That said three notes are the identical notes sued on in the first, second, and third causes of action, etc. That said Coughanour was not informed in regard to the execution or delivery of said notes, or either or any of them, and had no knowledge thereof, or in regard to the execution or delivery of said notes, until after the commencement of this action, and did not at any time authorize or empower defendant Grignon to incur any liability of any kind whatsoever with plaintiff in excess of the sum of $6,000.

From the foregoing finding of facts the court finds the following conclusions of law. That the notes sued upon in the first, second, and third causes of action in plaintiff's complaint were given without consideration, and without authority from defendant Coughanour, and that said defendant cannot be held therefor. Under the facts, as disclosed by the record in this case, can this finding of fact and conclusion of law be sustained? The copartnership of the defendants is not disputed. The authority of the defendant Grignon to transact the business for the firm is not questioned. The execution of the notes, and their delivery to the appellant by defendant Grignon, are not questioned. That a credit of $6,000 was authorized by defendant Coughanour is shown by his testimony. That he (Coughanour) asked for extensions of the indebtedness, and sent money to pay interest from time to time, is disclosed by the record. That as late as August 2, 1895, he wrote Mr. Clark,

cashier of appellant, offering to give security due February, 1896, on such indebtedness. That property of the firm of Grignon & Coughanour was sold in the foreclosure suits in Blue Earth county, Minnesota, and proceeds of such sales, amounting to $1,627.82, applied on payment of said indebtedness as found by the trial court. That the amount claimed by plaintiff is the amount due from the defendants after giving such credits, we think is fairly deducible from the records. That the mortgage on the property in Minnesota, and the sale of the same, and the credit of the proceeds of such sale, were for the benefit of the firm of Grignon & Coughanour, and the judgment in no way affected the defendant Coughanour, excepting his partnership property in that state. We do not think the findings of fact and conclusion of law can be sustained. That defendant Grignon had the authority to execute and deliver the notes, see Lindley on Partnership, 287; *Barber v. Van Horn,* 54 Kan. 33, 36 Pac. 1070; *Rich v. Davis,* 4 Cal. 23; *Pierce v. Jackson,* 21 Cal. 636; *Gray v. Ward,* 18 Ill. 32; *Morse v. Hagenah,* 68 Wis. 603, 32 N. W. 634; *Kelton v. Leonard,* 54 Vt. 230; *Davis v. Cook,* 14 Nev. 265. That the judgment rendered in Minnesota on the same indebtedness sued on here is not a bar, see *Knatz v. Wise,* 16 Mont. 555, 41 Pac. 711; *Lewis v. Clarkin,* 18 Cal. 399; *Atlantic etc. Ry. Co. v. Laird,* 164 U. S. 393, 17 Sup. Ct. Rep. 120, 41 L. ed. 485; *Bonesteel v. Todd,* 9 Mich. 371, 80 Am. Dec. 90; *Larison v. Hager* (C. C.), 44 Fed. 49. That there was a consideration for the notes sued on in the first, second, and third causes of action, see *Rosin v. Thomas,* 88 N. C. 149; *Shields v. Whitaker,* 82 N. C. 516; *Saunders v. Bates,* 54 Neb. 209, 74 N. W. 578; *Perrin v. Royal,* 42 Ind. 132; *Woodbridge v. Skinner,* 15 Conn. 306; *Murphy v. Carey,* 89 Hun, 106, 34 N. Y. Supp. 1038; *Bank v. Watt,* ante, p. 510, 64 Pac. 223. We think a careful review of the record in this case discloses the fact that the credit extended to Grignon & Coughanour by appellant bank never exceeded the limit of $6,000, as fixed by defendant Coughanour. It is true that Coughanour testifies that, in addition to the indebtedness to the bank, he sent about $8,000 to his partner, Grignon, but it nowhere appears that any part of this money was ever paid to the

bank to liquidate the indebtedness of the firm of Grignon & Coughanour, or that said money was sent by Coughanour to his partner for that purpose or with such instructions; hence, even if the contention of respondent that the credit should be limited to that amount is correct—and we do not want to be understood as agreeing with this contention—the findings and conclusions of the trial court could not be upheld. In view of the foregoing conclusions, the judgment of the lower court is reversed, and remanded for further proceedings in harmony with our conclusions.

Quarles, C. J., and Sullivan, J., concur.

### PETITION FOR REHEARING.

(June 20, 1901.)

Per CURIAM.—The petition for a rehearing in this case shows no good reason why the same should be granted. A rehearing is denied.